MIDDLETON et al. v. SCAIFE et al.

No. 5737.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Craig, Bolin, Magee & Baucum, of Mansfield, for appellants.

J. S. Pickett, of Many, for appellees.

HAMITER, Judge.

A Ford Model-A. coupe was traveling along U. S. Highway 171 on the evening of September 27, 1935, when it became involved in a collision with a 1934 Chevrolet coach that was proceeding in the opposite

direction. Driving the Ford was its owner, Louis R. Middleton, and with him as a guest passenger was Bob B. Midyett. The Chevrolet belonged to the Louisiana Long Leaf Lumber Company and was being operated by E. A. Scaife, an employee and agent of said company. Also in this last mentioned machine were Mr. and Mrs. D. M. Norris and their small daughter.

At the point of the collision, which was about two and one-half miles south of Stonewall, Louisiana, the highway is straight, runs generally in a north and south direction, is an 18-foot concrete slab, and has dirt shoulders varying at from three to six feet in width. It is bisected by the usual black line. A short distance north of such point is a slight curve, which, when looking toward the south, is to the right.

As darkness was commencing on the above named evening, and during foggy and misty weather, the Chevrolet, driven by Scaife toward the south, negotiated said curve and thereafter collided with the Ford, which was traveling north.

At the place of the accident was a parked truck, having dual wheels, owned by Edward Duncan. It was on the east side of the highway, fronting in a northerly direction, ahead of the Ford car. Both right wheels were on the shoulder, while the left rear wheel rested on the concrete about one and one-half to two feet from the eastern edge. The remaining wheel stood about the pavement's edge. Tire trouble on the right front wheel of this truck had developed and the owner was then engaged in making the necessary repairs. Its lights, as well as those of the other machines, were burning.

The impact precipitated Middleton and Midyett from the Ford and onto the pavement, rendering both unconscious and causing severe and serious injuries to them. Middleton died several days later. None of the occupants of the Chevrolet was dislodged therefrom. Some sustained injuries, but these were much less serious than those above mentioned.

Outgrowths of the unfortunate occurrence were two suits instituted against the said E. A. Scaife and his employer, the Louisiana Long Leaf Lumber Company, in which solidary damage awards are asked. The plaintiffs in the above styled and numbered cause are the brothers and sisters of the deceased Louis R. Middleton. The guest passenger in the Ford, Bob B. Midyett, brought the other proceeding, La.App., 190 So. 832. As a similarity of issues existed, the cases were consolidated.

In the petitions plaintiffs make the charge that the accident resulted because of the negligence of Scaife in the operation of the Chevrolet. Defendants in their answers deny that charge. In the alternative, contributory negligence on the part of both Middleton and Midyett is pleaded.

After a trial of the cases on the merits, the district judge rejected the demands of the plaintiffs, assigning written reasons for his decisions. These appeals were prosecuted by them.

It is the contention of the plaintiffs that the collision occurred on the east or Middleton's side of the highway and some 15 or 20 feet back of the parked truck; and, according to the brief of their counsel, "that Louis Middleton was either stopped or was driving very slowly and in the act of stopping when E. A. Scaife, after he had rounded the curve, caused his car to swerve into the left front of the Middleton car."

Defendants urge that Scaife was driving on the proper side of the highway and the Ford car appeared suddenly in his path of travel, resulting in the collision.

In reaching his decisions, the trial judge rejected entirely the testimony of one of the witnesses offered by plaintiffs, saying:

"The only eye witness that the plaintiff introduced, and who claimed to have seen the accident, was a negro who stated that he was sitting on his front porch some fifty yards from the scene of the accident and directly opposite therefrom, and that although it happened at about dark, and it appears from the evidence of all parties herein that the night was cloudy and misting rain, that he saw the defendants' car swerve to the left and strike the car of the said Louis R. Middleton, now deceased. His evidence contradicted in many particulars that of all of the plaintiffs' other witnesses and that of all of the defendants' witnesses, and the court observed his demeanor on the stand and, taking into account the fact that his evidence contradicted both plaintiffs' and defendants' witnesses, this Court believes that he is unworthy of belief, and for that reason disregards the testimony of the negro, Quick Anderson, entirely in passing upon the facts in this case.

"This is particularly true in that the negro said that the defendant was driving

in one direction and the deceased was driving in the other direction, and that the deceased was driving at a slow rate of speed, as proved by plaintiffs' other witnesses, and that the defendant was driving at a rapid rate of speed, and yet he testified that they reached the point of the accident, which was half way between, at the same time.

"The Court further does not believe his testimony in that the Court does not believe that he could have been sitting fifty yards from the scene of the accident and directly across from the road and have seen the positions of the cars with respect to the black line on a foggy and misty night. If the Court were to take this negro's evidence, he would have to disbelieve all of plaintiffs' and defendants' witnesses and decide the case purely upon his evidence."

█ In view of the circumstances pointed out, and of others revealed by the record, we are unable to say that error was committed in disregarding such testimony. Particularly noticeable is the fact that the witness did not go to the scene of the accident and lend assistance to Mr. Middleton. This inaction seems peculiarly strange when it is considered that such witness was then in Middleton's employ, recognized the employer, and knew that he was seriously injured.

Mr. Midyett, the guest passenger in the Ford, remembered nothing about the collision, and therefore was unable to testify as to its cause. This inability was due to the state of unconsciousness that befell him.

The testimony given by the other witnesses who appeared in behalf of the plaintiffs related to the physical facts surrounding and connected with the accident as they existed following the collision, such as the damage sustained by the colliding cars and the relative positions on the highway of the three machines and the dislodged men. This evidence was offered for the purpose of substantiating the contention that the impact occurred on the east or Middleton's side of the highway and some 15 to 20 feet behind the parked truck. Some of the mentioned witnesses differ with one another regarding very important details; and at least two of them, namely, Edward Duncan and H. D. Hardeman, relate facts that do violence to the theory advanced by plaintiffs and corroborate to a great extent the version expressed by defense witnesses.

Duncan, the owner of the parked truck, was only a few feet away when the collision occurred. He did not see the cars come together, however, because his efforts at the time were devoted to the pumping of air into the tire of the truck's right front wheel. On hearing the noise made by the impact, he ceased work on the tire and directed his attention to the wreck and those injured therein. Middleton was found lying on the pavement about two feet south of the rear of the truck. Three or four feet farther south was the Middleton car standing crosswise of the pavement and facing east. Midyett lay on the concrete two or three feet south of that car. The Chevrolet, or Scaife car, was on the highway, about even with the back of the truck and about eight feet from the Ford. He and others pushed it backward into the ditch adjoining the highway to permit the passage of traffic.

The scene of the accident was reached by Mr. Hardeman shortly after the occurrence. He had been traveling north in his car toward his home in Stonewall. He stopped about 50 or 60 feet south of the locus and remained in his machine until the two men were lifted from the pavement. Following this, he descended onto the concrete and viewed the existing conditions. The Middleton car was observed fronting in a southeasterly direction and standing across the black center line. Its front end was a little nearer the shoulder on the eastern side than the rear was to the shoulder on the west. A quantity of broken glass was noticed on the highway. This lay alongside the parked truck.

A mechanic employed by a wrecking service organization, and who removed both of the machines from the scene of the collision, states that the Middleton car was severely damaged on the left front and left side. Most of the harm sustained by the Scaife automobile was on its front, the left side thereof being only slightly damaged.

It is the testimony of defendant Scaife that he was proceeding south at a speed of 35 or 40 miles an hour when he noticed the approaching Middleton car. He slowed his machine, which was on the right side of the road, "and the next thing I knew I heard a crash and this car flew right in my face, and so we were tied up." The collision caused his car to stop suddenly,

heading "right in line with the road." He and others then backed it off the pavement and left it with the front end on the shoulder and the rear in the adjoining shallow ditch.

Mrs. Norris states that: "We were driving south toward Mansfield and all of a sudden I heard a crash, and then just a big black something seemed to just bounce up in front of our car and collided with it." The Chevrolet, in which she was riding on the rear seat, stopped immediately on its right side of the road, fronting south, "possibly half way past the truck." The Middleton car after the accident was "across the highway at an angle," and a few feet south of the Chevrolet.

Another occupant of the Chevrolet, Mr. Norris, was on the front seat beside the driver. He testifies that Scaife was driving on his right hand side of the black line, going south, "when suddenly I heard a crash and this same instant this car bounced over in front of our car and we hit it at some angle." After the collision the Chevrolet was "pretty well on the right side of the road going south", with its front end about five feet south of the rear of the truck. The Middleton car was sitting almost squarely across and near the center of the highway, facing east, about eight or ten feet southwest of the truck and eight feet south of the Chevrolet.

The trial judge founded his decisions primarily on the testimony of Duncan, Hardeman and the above mentioned occupants of the Chevrolet automobile. He held, as his written opinion discloses, that there was no negligence on the part of Scaife in the operation of his car, and said:

"After carefully reviewing the evidence, this Court is of the opinion that the defendant was proceeding south on the highway and on his side of the road, and that Louis R. Middleton was driving north on the highway and that the night being foggy and misty he did not see the parked truck in time to stop his car, and that he had the alternative of crashing into the parked truck or trying to go around it, and that he attempted to go around the parked truck and moved over on to the defendants' side of the road, and that this was the cause of the accident."

If the true physical facts surrounding the collision are as disclosed by the testimony relied on and accepted by the district judge, the decisions are, in our opinion,

correct. Those facts seem to support the court's theory that the accident happened very close to the rear of the truck, as the Ford crossed the black line and attempted a passage of the parked vehicle. Important and very persuasive are the above stated positions on the highway, as they relate to the said truck, of the two automobiles, of the dislodged occupants of the Ford, and of the broken glass. It appears that the shown relative positions would not have endured, particularly the glass alongside the truck and the rear end of the Middleton car in the west traffic lane only eight or ten feet southwest of said truck, had the cars come together, as plaintiffs contend, on the highway's eastern side and fifteen to twenty feet back of the parked machine.

 As the above discussion clearly discloses, the instant cases present only issues of fact and involve the credibility of witnesses. The trial judge resolved the facts in favor of the defendants. We are unable to hold from our study of the record that he manifestly erred in his conclusion, and, according to the settled jurisprudence of this state, the decisions appealed from should not and will not be disturbed.

Therefore, the judgment is affirmed.